UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY GILLOW, JR., | |
| Plaintiff, | CIVIL ACTION NO. 3:23-CV-00521 |
| v. | (MEHALCHICK, J.) |
| THE PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, | |
| Defendant. | |

**MEMORANDUM**

Before the Court is a motion for judgment on the pleadings and a motion for summary judgment filed by the Pennsylvania Department of Transportation ("PennDOT"). (Doc. 42; Doc. 53). This discrimination action arises out of the termination of Plaintiff Gary Gillow Jr. ("Gillow") from PennDOT in June 2022. (Doc. 1; Doc. 28). For the following reasons, PennDOT's motion for judgment on the pleadings will be **GRANTED** and PennDOT's motion for summary judgment will be **DENIED** as **MOOT**. (Doc. 42).

I. **BACKGROUND**

Prior to June of 2022, Gillow was a full-time employee at PennDOT, where he worked as a Transportation Equipment Operator B. (Doc. 28, ¶¶ 11- 14). In January of 2022, Gillow's right leg was amputated below the knee (Doc. 28, ¶ 13). As a result of the amputation, Gillow asserts he is a qualified individual with a disability. (Doc. 28, ¶ 13). Gillow alleges he requested appropriate accommodations from PennDOT but was denied. (Doc. 28, ¶¶15-18). On June 15, 2022, PennDOT terminated Gillow's employment. (Doc. 28, ¶ 18). PennDOT attributes the termination to a post Gillow made on Facebook which contained "inappropriate comments" about PennDOT's staff. (Doc. 28, ¶¶ 20-21).

Following his termination, Gillow filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") asserting that PennDOT violated his rights under the ADA and PHRA. (Doc. 28, ¶ 4). The EEOC issued a "Right to Sue" notice on December 30, 2022. (Doc. 28, ¶ 5). Within 90 days, on March 24, 2023, Gillow filed his initial complaint against Defendants, commencing this action. (Doc. 1; Doc. 28, ¶ 6). Gillow filed the operative amended complaint on February 6, 2024. (Doc. 28). Therein, Gillow asserts a claim under Title I of the Americans with Disabilities Act ("ADA") against PennDOT. (Doc. 28, at 6-11). In connection with these claims, Gillow seeks injunctive relief and monetary damages. (Doc. 28).

On May 31, 2024, PennDOT filed a motion for judgment on the pleadings as well as a brief in support. (Doc. 42; Doc. 43). Confusion ensued when Gillow filed an "Answer" to the motion in which he states: "1. Admitted. Al [sic] remaining claims of Plaintiff will proceed." (Doc. 44). The document appeared to be filed in err, with its title being "PLAINTIFF'S ANSWER TO DEFENDANTS MOTION FOR PARTIAL DISMISSAL (Doc. 7)." (Doc. 44).

On October 15, 2024, without a resolution on its motion for judgment on the pleadings, PennDOT filed a motion for summary judgment along with a statement of facts and a brief in support. (Doc. 53; Doc. 54; Doc. 55). On October 25, 2024, PennDOT also filed a motion for extension of time to serve its expert report on Gillow. (Doc. 56). Gillow filed a response to the motion for extension of time on October 26, 2024. (Doc. 57).

In consideration of the aforementioned filings, the Court requested a call with the parties to better understand the posture of this case, which occurred on November 6, 2024. (Doc. 58). The Court directed Gillow to clarify his position on the motion for judgment on

the pleadings. (Doc. 62). Gillow provided that his "Answer" to the judgment on the pleading was filed in error, and on November 7, 2024, he filed an "Amended Answer." (Doc. 61). Gillow then filed a brief in opposition to the pending motion for judgment on the pleadings on November 15, 2024. (Doc. 63; Doc. 64). Gillow also filed numerous responsive filings to PennDOT's motion for summary judgment. (Doc. 65; Doc. 66; Doc. 67; Doc. 68). On November 29, 2024, PennDOT filed two reply briefs, one addressing their motion for judgment on the pleadings and another addressing their motion for summary judgment. (Doc. 69; Doc. 70). Accordingly, each motion is ripe and ready for discussion.[1]

**II.    STANDARDS OF LAW**

   A.   MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and thus, the movant is required "'to clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion,

---

[1] The Court further ordered that PennDOT's motion for extension of time to serve its expert report on Gillow be held in Abeyance until the resolution of the pending motions for judgment on the pleading and motion for summary judgment. (Doc. 63). As these motions will now be resolved in PennDOT's favor, the motion for extension of time may be **DENIED** as **MOOT**. (Doc. 56).

construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); Thus, to survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

"In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)). When adjudicating a motion for judgment on the pleadings, the court should generally consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record.")

B. MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might

4

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes

5

such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

**III.   DISCUSSION**

PennDOT's two motions each address the sole remaining claim in this action; Gillow's Title I claim brought under the ADA. (Doc. 28, at 6-11; Doc. 42; Doc. 53). Both motions request dismissal of the amended complaint because PennDOT is entitled to immunity. (Doc. 42; Doc. 55). The Court will first address PennDOT's motion for judgment on the pleadings, and then resolve any remaining issues addressed in the motion for summary judgment.

A. M<span>OTION FOR</span> J<span>UDGMENT ON THE</span> P<span>LEADINGS</span>

PennDOT moves for judgment on the pleadings on Gillow's remaining claim under Title I of the ADA, arguing it is entitled to Eleventh Amendment immunity for the request for monetary damages and that Gillow's request for injunctive relief is barred because the *Ex parte Young* exception is not applicable in lawsuits brought against a state agency. (Doc. 43, at 2). According to Gillow, PennDOT's motion should be denied because "[t]he Eleventh Amendment is no bar to this action brought by the Plaintiff amputee Gillow under the ADA to remedy discrimination against individuals with disabilities." (Doc. 64, at 9). In its reply brief, PennDOT reiterates its first two arguments and also avers that Gillow's brief in opposition should be "disregarded for failing to comply with Local Rules 7.6 and 7.8 without leave of court," and for failing to this Court's Order to explain his prior filing, Document 44. (Doc. 69, at 14). Additionally, in its reply brief PennDOT complains that Gillow failed to defend against PennDOT's argument that the injunctive relief he seeks is barred as a matter of law. (Doc. 69, at 4). The Court will address each argument in turn.

1. **Gillow's Failure to Comply with Local Rules and Court Orders**

Gillow's inability to comply with Local Rules and Court Orders has prejudiced both PennDOT in defending this case and this Court in its ability to address the issues before it in an efficient manner. As PennDOT points out, in his opposition brief Gillow makes no attempt to comply with the Local Rules, particularly Rule 7.6 and 7.8, which designate the structure and length of briefs to be filed in this Court. (Doc. 64; Doc. 69, at 5). Further, despite instruction to do so during the November 6, 2024, conference call, Gillow has yet to provide the Court with a coherent explanation as to how Document 44 was filed in error and why Gillow appears to have admitted his claims are barred for the reasons set forth in PennDOT's

brief in support of his motion for judgment on the pleadings. (Doc. 44; Doc. 69, at 6). While these offenses are arguably inexcusable, given the posture of this case and the numerous pending motions, this Court will nonetheless address PennDOT's motions on the merits, taking into consideration Gillow's filings. (Doc. 42; Doc. 53; Doc. 56). While Gillow's amended complaint will ultimately be dismissed, this Court warns counsel that future noncompliance with the Local Rules and Court directives may result in filings being stricken and arguments being disregarded.

### 2. Eleventh Amendment Immunity

According to PennDOT, "[i]t is well established that all Title I of the ADA claims are barred by the Eleventh Amendment." (Doc. 43, at 3). Gillow responds:

> This case once again forces the parties and this Honorable Court to look to the constitutionality of Congress' statutory abrogation of the states' Eleventh Amendment immunity for private suits under the Americans with Disabilities Act of 1990 ("ADA"), 42U.S.C. § 12131 et seq. It is critical for all to respect the rights of a private party like amputee Gary Gillow and private parties' claims of injury.

(Doc. 64, at 8).

Then, without citing any cases to the same effect, Gillow argues that "[t]he ADA's statutory abrogation of Eleventh Amendment immunity is a no doubt a valid exercise of Congress' power under Section 5 of the Fourteenth Amendment, which authorizes Congress to enact 'appropriate legislation' to 'enforce' the Equal Protection Clause." (Doc. 64, at 8). In its reply brief, PennDOT addresses this argument, stating "Plaintiff appears to attempt to provide this Court with a somewhat nonsensical treatise about the standard for an ADA claim, the legislative history of the enactment of the ADA, and an academic discussion of whether the ADA can state an Equal Protection claim," and that even when "liberally construed, however, Plaintiff's argument that can be determined to attempt to respond to the arguments

8

presented with Defendant's pending Motion, is that Plaintiff claims that the Department allegedly waived its immunity from suit from Title I of the ADA because it receives federal funding." (Doc. 69, at 8). The Court agrees with PennDOT.

The Supreme Court, and more recently, the Third Circuit, have found that "the Eleventh Amendment bars private suits seeking money damages for state violations of Title I of the ADA." *Durham v. Kelley*, 82 F.4th 217, 228 (3d Cir. 2023); *Bd. of Trustees of the Univ. of AL. v. Garrett*, 531 U.S. 356 (2001); *see also Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 166 n.3 (3d Cir. 2002). Title I of the ADA in relevant part provides: "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112 (emphasis added). To determine if Congress abrogated sovereign immunity, the court must determine whether there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Tennessee v. Lane*, 541 U.S. 509, 520 (2004) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)). This "congruence and proportionality" test requires that the Court to:

> (1) identify "with some precision the scope of the constitutional right at issue;"
> (2) examine whether Congress has identified a history and pattern of unconstitutional discrimination by the states; and (3) determine whether the rights and remedies created by the ADA against the states are congruent and proportional to the constitutional injury sought to be prevented.

*Shaw v. Pennsylvania Dep't of Corr.*, No. CV 17-229, 2018 WL 6831148, at *5 (W.D. Pa. Dec. 28, 2018) (citing *Garrett*, 531 U.S. at 363).

Applying the "congruence and proportionality" to Title I of the ADA, the Supreme Court in *Board of Trustees of the University of Alabama v. Garrett* determined that "[t]he legislative record of the ADA ... fails to show that Congress did in fact identify a pattern of irrational

state discrimination in employment against the disabled." *Garrett*, 531 U.S. at 365, 368, 372–73. Instead, congressional findings focused on employment discrimination in the private sector, and "Congress assembled only such minimal evidence of unconstitutional state discrimination in employment against the disabled." *Garrett*, 531 U.S. at 369–70. Accordingly, the Court held that Title I did not validly abrogate the states' sovereign immunity. *Garrett*, 531 U.S. at 375. Thus, as PennDOT is a state actor, Congress has not abrogated PennDOT's sovereign immunity with respect to Gillow's claim for damages under Title I of the ADA. PennDOT is therefore immune from suit for the monetary claims against it by Gillow by the Eleventh Amendment. Gillow's claim for monetary damages against PennDOT therefore must be **DISMISSED with prejudice**. (Doc. 28, at 6-11). PennDOT's motion for judgment on the pleadings is **GRANTED** on this basis. (Doc. 42).

    **3.** *Ex parte Young*

According to PennDOT, all Gillow's requests for injunctive relief are also barred as a matter of law. (Doc. 42, at 5). PennDOT explains that "[s]tated simply, the *Ex parte Young* exception [which would allow for injunctive relief despite Eleventh Amendment protections] does not apply to state agencies." (Doc. 42, at 5). Thus, because Gillow filed this lawsuit solely against PennDOT, which is a state agency, he cannot seek injunctive relief. (Doc. 42, at 5-6). Gillow does not specifically address this argument in his opposition brief, instead just maintaining the standards set by the Supreme Court in *Garrett* "can be enforced in actions for money damages by the United States and *actions for prospective injunctive relief as here*." (emphasis added) (Doc. 64, at 45).

    "[U]nder *Ex parte Young*, claims against a state official in his or her official capacity for prospective declaratory or injunctive relief are not barred by the Eleventh Amendment." *Tigue*

*v. Pennsylvania State Police*, No. 3:23-CV-00130, 2023 WL 7130622, at *14 n.3 (M.D. Pa. Oct. 30, 2023) (citing *Ex parte Young*, 209 U.S. 123 (1908)). However, *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Walker v. Beard*, 244 F. App'x 439, 440 (3d Cir. 2007); *see also TEAH REBEKKA ADAMS, Plaintiff, v. COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Defendant.*, No. 3:23-CV-01344, 2025 WL 83744, at *5 (M.D. Pa. Jan. 13, 2025). Before the Court now is just that, a lawsuit against a state agency. Accordingly, in the instant case, *Ex parte Young* has "no application," as the sole Defendant in this lawsuit is PennDOT. Gillow's claims for injunctive relief are thus barred and therefore must be **DISMISSED with prejudice**. (Doc. 28, at 6-11). PennDOT's motion for judgment on the pleadings is **GRANTED** on this basis. (Doc. 42).

    B.    MOTION FOR SUMMARY JUDGMENT

PennDOT seeks summary judgment on Gillow's Title I claim under the ADA on several bases, including on the basis of immunity as is discussed *supra*. Because consideration of PennDOT's motion for judgment on the pleadings has resulted in the dismissal of Gillow's sole claim, there are no outstanding matters to address in relation to PennDOT's motion for summary judgment. Accordingly, the motion is **DENIED** as **MOOT**. (Doc. 53).

IV.    CONCLUSION

Based on the foregoing, PennDOT's motion for judgment on the pleadings is **GRANTED**. (Doc. 42). PennDOT's motion for summary judgment is **DENIED** as **MOOT**. (Doc. 53). PennDOT's motion for extension of time to serve expert reports is also **DENIED** as **MOOT**. (Doc. 56). Gillow's amended complaint is **DISMISSED** with prejudice. (Doc.

11

28). Judgment will be rendered in PennDOT's favor and the Clerk of Court is directed to **CLOSE** this matter. An appropriate Order follows.

Dated: February 11, 2025					*s/ Karoline Mehalchick*
							**KAROLINE MEHALCHICK**
							**United States District Judge**